IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHNATHAN LACY, KENNETH FARRIS, MARQUIS BOWERS, MAURICE BOSTON, KEVIN DAWSON, individually and for all others similarly situated, | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) No. 14 C 6259 |
| v. | )<br>) Judge Robert W. Gettleman |
| THOMAS DART, SHERIFF OF COOK COUNTY, COOK COUNTY, ILLINOIS, SGT. JOHNSON, CORRECTIONAL OFFICER NAWARA, CORRECTIONAL OFFICER LOPEZ, CORRECTIONAL OFFICER WILSON, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jonathan Lacy, Kenneth Farris, Marquis Bowers, Maurice Boston, and Kevin Dawson,[1] filed a putative class action amended complaint against defendants Thomas Dart, Sheriff of Cook County, Illinois (the "Sheriff"), Cook County, Illinois, and correctional officers Nawara, Lopez, and Wilson,[2] alleging violations of section 202 of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), and 42 U.S.C. § 1983. The court held an extensive evidentiary hearing on plaintiffs' request for preliminary injunctive relief, and oral arguments are scheduled. Plaintiff has also

---

[1] Dawson was added as a named plaintiff on January 13, 2015. See docket no. 84.

[2] These individual officers were sued only as a part of plaintiff Lacy's excessive force claim. A motion to sever Lacy and his excessive force claim is currently pending.

moved under Fed. R. Civ. P 23(b)(2)[3] to certify a class defined as: "all persons presently confined at the Jail who have been classified by Jail officials as requiring a wheelchair."[4] Defendants oppose class certification. For the reasons described below, the court grants plaintiffs' motion.

## BACKGROUND

Plaintiffs are five wheelchair using detainees at the Cook County Jail ("Jail"), who seek, individually and on behalf of the proposed class, preliminary and permanent injunctive relief, preventing "defendants from continuing to deprive wheelchair bound detainees of rights secured by" section 202 of the ADA and section 504 of the Rehabilitation Act. Specifically, plaintiffs contend that, like all Jail detainees, they attend court each month in connection with their underlying criminal cases at either the Leighton Criminal Courthouse ("Leighton") or one of five suburban courthouses: Maywood; Markham; Skokie; Rolling Meadows; and Bridgeview. Plaintiffs complain that as wheelchair using detainees they are subject to numerous ADA and Rehabilitation Act violations in connection with their criminal court appearances.

**A.    Trip to Courthouse**

    **1.    Transport Vans – Suburban Courthouses**

Plaintiffs and other wheelchair using detainees are transported from the Jail to suburban courthouses by correctional officers employed by the Sheriff using transport vans. According to plaintiffs, Cook County, which provides the vehicles, "has failed to provide defendant Sheriff

---

[3] Plaintiffs have withdrawn their request for certification of a Fed. R. Civ. P. 23(b)(3) class.

[4] Plaintiffs' reply brief has a slightly altered class definition: "all persons who are assigned a wheelchair on entry to the [Cook County] Jail."

2

with a sufficient number of 'handicap vans.'" Plaintiffs also complain that even when appropriate handicap vehicles are used, Sheriff's employees fail to properly strap and secure wheelchair using detainees into the van, resulting in detainee injuries.

### 2. Leighton Courthouse

Plaintiffs also allege that their rights under the ADA and Rehabilitation Act are violated when they are transported from their living quarters at the Jail to the Leighton courthouse. According to plaintiffs, before traveling to the Leighton building, wheelchair using detainees are staged at the entrance to the tunnel connecting the Jail to the Leighton courthouse. Plaintiffs complain that whereas non-wheelchair using detainees are held in holding cells with accessible toilets and sinks while awaiting transport to the Leighton building, wheelchair using detainees are forced to sit in their wheelchairs in the basement hallway without access to an accessible toilet or sink.

## B. Ramps

Upon arrival to the suburban courthouses, Sheriff's employees unload wheelchair using detainees in the loading dock areas of the respective courthouses. According to plaintiffs, despite a policy to the contrary, wheelchair using detainees often must propel themselves up non-ADA compliant ramps, without assistance, to access the courthouse from the loading dock. Plaintiffs allege that when returning to the vans for transport back to the Jail, wheelchair using detainees also must maneuver unassisted down the non-ADA compliant loading dock ramps.

## C. Holding Cells

At both the Leighton and suburban courthouses, detainees are held in basement holding cells prior to being brought up to their respective courtrooms. Plaintiffs allege that these holding

cells are not accessible, and that defendants fail to provide accommodations necessary to overcome physical barriers in the cells. According to plaintiffs, the basement holding cells do not have accessible toilets or sinks.

Plaintiffs also allege that wheelchair bound detainees are held in holding cells outside of their respective courtrooms prior to their cases being called. Plaintiffs complain that as with the basement holding cells, the holding cells adjacent to the courtrooms do not have accessible toilets or sinks, and that defendants have not provided adequate accommodations to make the existing fixtures accessible.

## DISCUSSION

**A.     Legal Standard**

Class action suits are governed by Fed. R. Civ. P. 23. Under Rule 23(c)(1)(A), the court should determine whether to certify an action as a class action "at an early practicable time." A two-step analysis is required to determine if class certification is appropriate. First, plaintiffs must satisfy all four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Harriston v. Chicago Tribune Co., 992 F.2d 697, 703 (7th Cir. 1993). Second, the action must also satisfy one of the conditions of Rule 23(b). Joncek v. Local 714 Int'l of Teamsters Health and Welfare Fund, No. 98-C-4302, 1999 WL 755051, *2 (N.D. Ill. Sept. 3, 1999). Here, plaintiffs pursue injunctive relief and seek class certification under Rule 23(b)(2), which states that a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

**B.     Ascertainability**

As a threshold matter, defendants argue that class certification is not appropriate because the putative class is not clearly ascertainable. Separate and apart from the requirements of Rule 23(a) and (b), the Seventh Circuit requires that "a class must be sufficiently definite that its members are ascertainable." Jamie S. v. Milwaukee Public Schools, 668 F.3d 481, 493 (7th Cir. 2012). Defendants contend that plaintiffs' class definition is "'fatally indefinite' because [it] . . . . does not distinguish between detainees that [sic] were provided a wheelchair for convenience, based on subjective complaints, . . . or based on objective medical determinations." According to defendants, the proposed class definition would improperly "include members that do not medically require a wheelchair along with members that were not 'disabled,' 'qualified individuals' as defined by the ADA." The court disagrees.

Plaintiffs' proposed class is ascertainable and definite. In their response brief, defendants state that "approximately 60 detainees require the use of a wheelchair to assist in some way with movement throughout" the Jail. Contrary to defendants' arguments, the fact that some of these detainees are not permanently confined to their wheelchairs or have more mobility than others, is irrelevant for purposes of certifying the putative class. The ADA and Rehabilitation Act protect persons who have a record of impairment or have been regarded as having an impairment. 42 U.S.C. § 12102(1). The 60 detainees using wheelchairs at the Jail are doing so because defendants provided them with wheelchairs. As such, these detainees are regarded as having an impairment, or at least have a record of impairment, negating the need to perform an individualized disability determination to identify class members. Moreover, class members are

easily identifiable through the Sheriff's "CCOMS" computer system, which keeps track of each detainee who has been assigned a wheelchair.

Defendants also complain that the proposed class is "'fatally indefinite' because it would include all wheelchair bound detainees that [sic] have been 'deprive[d]' their rights under the ADA regardless of where this deprivation has occurred." According to defendants, under the proposed class definition "a wheelchair bound detainee would be a member of the class if the violation occurred in their cell, in the division, at Cermak, or in transport to and from court."

Given that this lawsuit seeks to redress ADA violations related to court appearances by wheelchair using detainees, it is unclear how a detainees' ADA claims related to Jail cells, Jail divisions, or Cermak would come into play here. Accordingly, the present case does not encroach on the consent decree involving Jail conditions being overseen by another judge in this district. United States v. Cook County, Illinois, No. 10-C-2946 (Kendall). Plaintiffs' ADA and Rehabilitation Act claims in the present case involve only the Leighton courthouse and five outlying courthouses, along with transportation to each. Because all wheelchair using detainees attend court in at least one of these six courthouses, each of the prospective class members face the same alleged structural barriers at the respective courthouses. Moreover, the fact that putative class members may have been subject to conditions that have varying degrees of accessibility does not preclude class treatment. See Phipps v. Sheriff of Cook Cnty., 249 F.R.D. 298, 301 (N.D. Ill. 2008).

C.  **Application of Rule 23(a)**

1.  **Numerosity**

Rule 23(a)(1) requires a plaintiff to demonstrate that the members of the prospective class are so numerous as to make joinder impracticable. See e.g., Parker v. Risk Mgmt. Alternatives, Inc., 206 F.R.D. 211, 212 (N.D. Ill. 2002). "Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)(1)." McCabe v. Crawford & Co., 210 F.R.D. 631, 643 (N.D. Ill. 2002). Plaintiffs allege that their proposed class consists of more than 30 individuals. Moreover, defendants concede in their response brief that "approximately 60 detainees require the use of a wheelchair to assist in some way with movement throughout" the Jail. According to defendants, "[a]pproximately 30 of those detainees require a wheelchair at all times, including in their living unit, while the other 30 only require a wheelchair for purposes of transport or for long distances." Consequently, the court finds, and defendants do not contest, that a class consisting of wheelchair using detainees in the Jail is sufficiently numerous that joinder of all members is impracticable.

2.  **Commonality**

Rule 23(a)(2) requires the presence of "questions of law or fact common to the class." The rule does not mandate absolute commonality; a common nucleus of operative fact is usually enough to satisfy the requirement. Keele v. Wexler, 149 F.3d 589, 594 (7th Cir. 1998). Defendants argue that class certification is not appropriate because "Plaintiffs have not shown by a preponderance of the evidence the existence of issues of fact or law common to potential class members." Specifically, defendants contend that class members require and receive different levels of accommodation, thereby making it "impossible for the class to generate common

7

answers," as required by Rule 23(a)(2). According to defendants, evidence presented at the evidentiary hearing illustrated only random occurrences of individual discrimination. The court disagrees.

The instant case presents several common questions of law and fact. A threshold question is whether the ramps and holding cells at the six courthouses are compliant with the ADA and Rehabilitation Act's structural requirements and, more significantly, whether the facilities have to comply with those requirements at all. If the courthouses, because of their age, need not meet the statutory technical requirements, another common question is whether defendants' policies and actions sufficiently overcome structural barriers so as to satisfy the ADA and Rehabilitation Act. See McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 672 F.3d 482, 488-91 (7th Cir. 2012) (finding commonality despite the fact that defendant's policies were carried out in different offices, by different managers, and an individualized determination as to which class members were actually adversely effected would still be required). These questions constitute a common nucleus of operative fact, which is sufficient to establish the requirements of Rule 23(a)(2).

Contrary to defendants' arguments, no individualized determination is required concerning whether certain plaintiffs are sufficiently accommodated. As the court held in Dunn v. City of Chicago, 231 F.R.D. 367, 372 (N.D. Ill. 2005), "[t]he variations identified by defendant in the actual treatment of certain detainees . . . do not eliminate the common nucleus of fact." Here, plaintiffs have sufficiently alleged a common discriminatory practice by defendants. See Phipps, 249 F.R.D. at 301. Moreover, because plaintiffs have withdrawn their request for a Rule 23(b)(3) class, no determination of class damages is required. Plaintiffs seek

8

only injunctive relief for the class which, if granted, would resolve each class member's claims at once. For example, regardless of the level of accommodation a wheelchair using detainee may need or whether the detainee is always pushed up courthouse ramps, a ramp that is brought within the structural requirements of the ADA would cure the detainee's injury.

### 3. Typicality

Typicality under Rule 23(a)(3) is satisfied if a plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of the other class members and his or her claims are based on the same legal theory." De La Fuente v. Stokely–Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983). Typicality focuses "on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." Id. Because commonality and typicality are closely related, a finding of one often results in a finding of the other. Id.

Defendants argue that plaintiffs have failed to satisfy the typicality requirement because "any discriminatory conduct against the Plaintiffs themselves is uneven at best," requiring a determination by the court as to "whether Defendants offered any accommodation at all and whether that accommodation was reasonable under the circumstances [as to each class member]." Defendants also argue that the prospective class lacks typicality because "Plaintiffs must not only make a showing of disability, but that they are also qualified to make use of the services, programs and activities in question."

The court rejects defendants' arguments for reasons similar to its rejection of their commonality arguments. Plaintiffs and the putative class allege that courthouse ramps, holding cells, and transport vans are not compliant with the ADA and Rehabilitation Act and that

defendants have not provided adequate accommodations to overcome this non-compliance. Because plaintiffs, along with prospective class members, each use a wheelchair and attend court in at least one of the six courthouses at issue, they experience the same structural barriers and accommodations defendants allegedly provide. As such, plaintiffs' claims arise from the same events and course of conduct that gives rise to the claims of the other class members, and are based on the same legal theories.

As discussed previously, the putative class members are already identified as qualified for protection under the ADA because they are regarded as disabled or have a history of impairment. Defendants' argument that plaintiffs must show that they are qualified to make use of the "services, programs and activities in question" is nonsensical, because plaintiffs have a constitutional right to attend their court proceedings. See Tennessee v. Lane, 541 U.S. 509 (2004). Plaintiffs' claims do not require an individual evaluation of plaintiffs' disabilities or the accommodations allegedly provided, but rather ask the court to determine whether courthouse facilities and defendants' actions comply with federal statutes.

### 4. Adequacy of Representation

To be an adequate class representative under Rule 23(a)(4), plaintiff must have a "sufficient interest in the outcome to ensure vigorous advocacy." Chapman v. Worldwide Asset Mgmt., L.L.C., No. 04-C-7625, 2005 WL 2171168, *4 (N.D. Ill. Aug. 30, 2005). The requirement has "two parts: the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members." Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 598 (7th Cir. 1993)

(internal quotes omitted). However, the burden of demonstrating the class representative's adequacy is not heavy. Sledge v. Sands, 182 F.R.D. 255, 259 (N.D. Ill. 1998).

Defendants do not contest that plaintiffs' lawyers are adequate. Rather, they challenge the named plaintiffs' ability to represent the class due to their lack of credibility. In support of this contention, defendants point to testimony and evidence from the preliminary injunction hearing that allegedly impeached plaintiff Farris' and Bowers' claims of disability and plaintiff Dawson's claim that he could not transfer from his wheelchair onto a commode chair in the courthouse holding cell. According to defendants, the impeachment "went directly to the central issues of this case including whether [plaintiffs] are actually disabled under the ADA, whether they medically required a wheelchair, and whether the accommodations provided by the Sheriff and County were adequate."

"A class is not fairly and adequately represented if class members have antagonistic or conflicting claims," Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992), and some courts in this district have found that a named plaintiff with credibility problems may be considered to have interests antagonistic to the class. See Searcy v. eFunds Corp., No. 08-C-985, 2010 WL 1337684 (N.D. Ill. Mar. 31, 2010); Kaplan v. Pomerantz, 132 F.R.D. 504, 508-10 (N.D. Ill. 1990). Conversely, some courts in this district, including this court, have held that a class representative's credibility is irrelevant. See Levie v. Sears Roebuck & Co., 496 F.Supp.2d 944, 950 (N.D. Ill. 2007)("Credibility is not a requirement of a class representative, and whether or not a plaintiff is credible is irrelevant to that person's ability to be a class representative"); Streeter v. Sheriff of Cook Cnty., 256 F.R.D. 609, 613 (N.D. Ill. 2009). Even in courts where credibility is considered, a lack of credibility does not automatically render a named plaintiff

11

inadequate. Instead, such courts have generally found inadequacy only where the plaintiff's integrity is questioned on an issue that relates directly to a central part of the litigation. See CE Design Ltd. v. King Architectural Metals, Inc., 637 F.3d 721, 726 (7th Cir. 2011).

The fact that plaintiff Dawson was able to transfer to a commode chair in the courthouse holding cell, with what appeared to be with some difficulty, does not mean defendants are in compliance with federal statutes, which is the central issue to be decided by this case. Likewise, doctor DeFuniak's testimony concerning plaintiff Bowers' disability is not conclusive evidence that he is not disabled or does not require the assistance of a wheelchair. While the court has serious doubts about plaintiff Farris' credibility in light of the video evidence showing him standing and walking, as discussed above, his level of mobility is not at issue at this stage of the case. Moreover, striking him from the class at this point would be meaningless because there are other credible named plaintiffs, one of whom also attends court at the Bridgeview courthouse. See Phipps, 249 F.R.D. at 301 ("To the extent that [the named plaintiff's] credibility on this particular issue were relevant and problematic, the remaining named plaintiffs would arguably alleviate this concern."). Nothing about plaintiff Dawson, Bowers, and Farris' alleged credibility issues indicate that they have an antagonistic or conflicting claim, or that they do not have sufficient interest in the outcome of this case to ensure vigorous advocacy.

Plaintiffs have been assigned wheelchairs by defendants, they use these wheelchairs during court appearances, and therefore they face the same structural barriers as other wheelchair using detainees. The court again rejects defendants' argument that a central issue to this case is whether plaintiffs are actually disabled or medically require wheelchairs. As discussed

numerous times above, as individuals who have a history of impairment or have been regarded as disabled, plaintiffs are protected by the ADA and Rehabilitation Act.

The court finds that the remaining named plaintiffs also satisfy the requirement of adequacy of representation.

**D.      Application of Rule 23(b)(2)**

Rule 23(b)(2) states that a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); Pella Corp. v. Saltzman, 606 F.3d 391, 392 (7th Cir. 2010). As noted in the sections discussing commonality and typicality above, defendants have acted on grounds that apply generally to the class by allegedly failing to comply with the ADA and Rehabilitation Act.

Contrary to defendants' arguments, and as discussed at length in previous sections, the instant action does not require a "factual inquiry into each potential class member regarding their individual need for accommodation" or whether they received an accommodation. The injunctive relief plaintiffs seek as a class would resolve their alleged injuries at one time, regardless of the level of accommodation individual class members require. For example, toilet facilities that comply with the ADA's structural requirements will be accessible for all wheelchair using detainees (and non-wheelchair using detainees), even if the particular class member may be able to transfer to a commode chair. Consequently, as required by Rule 23(b)(2), a single injunction in the instant case would provide relief to each member of the class.

Certification of the proposed class furthers the goal of judicial economy because it avoids the duplicative litigation of identical claims. As such, the court finds that the proposed class satisfies the requirements of Rule 23(b)(2).

**E.     Propriety of Class Treatment**

Finally, defendants argue that class treatment is inappropriate because it would deprive them of their statutory right to assert an exhaustion defense. However, as plaintiffs point out, courts in this district have repeatedly held that each plaintiff to a class need not have exhausted administrative remedies for the case to proceed as a class action. See Phipps v. Sheriff of Cook Cnty., 681 F.Supp.2d 899, 908 (N.D. Ill. 2009) (holding that if any single member of the class exhausted the available remedies, the entire class can be deemed to have done so); Lewis v. Washington, 265 F.Supp.2d 939, 942 (N.D. Ill. 2003) ("one class member's exhaustion of administrative remedies satisfies the PLRA's exhaustion requirement as to the entire class"); In re Household Int'l Tax Reduction Plan, 441 F.3d 500, 501 (7th Cir. 2006) (holding that unnamed class members are not required to exhaust remedies under ERISA plan); Romasanta v. United Airlines, Inc., 537 F.2d 915, 919 (7th Cir. 1976) (exhaustion requirement satisfied when one member of a class to a Title VII suit has complied with the requirement).

Defendants' reliance on Woodford v. Ngo, 548 U.S. 81 (2006), and Jamie S., 668 F.3d 481, is misplaced. Woodford was not a class action, and therefore did not involve class certification. Contrary to defendants' assertion, the Seventh Circuit in Jamie S. did not address vicarious exhaustion, explicitly or otherwise, but instead questioned the propriety of the district court's assumption that exhaustion of administrative remedies would have been futile for a particular group of proposed class members, thereby waiving the requirement. Jamie S., 668

14

F.3d at 494. Accordingly, Jamie S.'s discussion relating to exhaustion has no bearing on the instant action.

## CONCLUSION

For the reasons stated above, the court finds that plaintiffs have satisfied the class certification requirements of Fed. R. Civ. P. 23(a) and 23(b)(2), and plaintiffs' motion for class certification is granted. The class is defined as: All Cook County Jail detainees who have been assigned and currently use a wheelchair.[5]

**ENTER:**     **April 30, 2015**

*[signature: Robert W. Gettleman]*

          **Robert W. Gettleman**
          **United States District Judge**

---

[5] District courts have wide latitude to redefine class definitions to resolve any ambiguity. See, e.g., Metro. Area Housing Alliance v. U.S. Dept. of Housing and Urban Dev., 69 F.R.D. 633, 638 n.7 (N.D. Ill. 1976).