IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHNATHAN LACY, KENNETH FARRIS, MARQUIS BOWERS, MAURICE BOSTON, KEVIN DAWSON, individually and for all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 14 C 6259 |
| v. | ) ) | Judge Robert W. Gettleman |
| THOMAS DART, SHERIFF OF COOK COUNTY, COOK COUNTY, ILLINOIS, SGT. JOHNSON, CORRECTIONAL OFFICER NAWARA, CORRECTIONAL OFFICER LOPEZ, CORRECTIONAL OFFICER WILSON, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jonathan Lacy, Kenneth Farris, Marquis Bowers, Maurice Boston, and Kevin Dawson, filed a putative class action amended complaint against defendants Thomas Dart, Sheriff of Cook County, Illinois (the "Sheriff"), Cook County, Illinois (the "County"), Sergeant Johnson, and correctional officers Nawara, Lopez, and Wilson,[1] alleging violations of section 202 of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, section 504 of the Rehabilitation Act ("Rehab Act"), 29 U.S.C. § 794(a), and 42 U.S.C. § 1983. Following oral arguments and an extensive evidentiary hearing on plaintiffs' request for preliminary injunctive relief, this court certified a class under Fed. R. Civ. P. 23(b)(2) of "All Cook County Jail detainees who have been assigned and currently use a wheelchair." Lacy v. Dart, No. 14-C-

---

[1] The individual sergeant and officers were sued as a part of plaintiff Lacy's excessive force claim only. These claims, however, have been voluntarily dismissed without prejudice. See doc. no. 193.

6259, 2015 WL 1995576 (N.D. Ill. April 30, 2015).  On October 8, 2015, the court granted in part plaintiffs' request for injunctive relief, requiring defendant Sheriff to redraft an order mandating that wheelchair-using detainees be given assistance when maneuvering courthouse ramps.  Lacy v. Dart, No. 14-C-6259, 2015 WL 5921810 (N.D. Ill. Oct. 8 2015).

Currently before the court is plaintiffs' motion [doc. 164] for partial summary judgment as to each of their individual ADA and Rehab Act claims and defendants' motion [doc. 183] for summary judgment as to all of plaintiffs' claims.  Defendants have also filed a motion [doc. 178] to strike portions of plaintiffs' local rule 56.1 statement of fact.  For the reasons discussed below, the court grants plaintiffs' motion for partial summary judgment and denies defendants' motion for summary judgment and motion to strike.

## **BACKGROUND**[2]

The extensive factual and evidentiary history of this case was comprehensively discussed in the court's October 8, 2015, memorandum opinion and order (the "October 8 Order").  Lacy, 2015 WL 5921810.  Nevertheless, the court briefly reiterates that plaintiffs are or were[3] wheelchair-using detainees held at the Cook County Jail.  Plaintiffs, like all Cook County Jail detainees, attend court periodically in connection with their underlying criminal cases at either the Leighton Criminal Courthouse in Chicago ("Leighton") or one of five suburban courthouses:

---

[2] Ordinarily, the following facts would be undisputed and come from the parties' Local Rule 56.1 statements and responses.  However, because the court has already made factual findings in this case as a part of its October 8, 2015, memorandum opinion and order, Lacy, 2015 WL 5921810, the following facts are taken from those findings.

[3] After this lawsuit was filed, plaintiff Lacy was transferred into the custody of the Illinois Department of Corrections and plaintiff Dawson was released from pretrial detention at the Cook County Jail.

Maywood; Markham; Skokie; Rolling Meadows; and Bridgeview. Plaintiffs complained that as wheelchair-using detainees they were subject to numerous ADA and Rehab Act violations in connection with their criminal court appearances. Specifically, plaintiffs alleged that the Sheriff's transportation vehicles, along with courthouse ramps and holding cells were not compliant with the ADA and Rehab Act's architectural accessibility standards (or "structural requirements") and that defendants had not provided reasonable accommodations to overcome these barriers.

After seven days of evidentiary hearing, multiple pre and post-hearing briefs, and additional submissions of evidence, the court found, as articulated in the October 8 Order, that plaintiffs' rights under the ADA had been violated in the past with respect to courthouse ramps and bathroom facilities. The evidentiary record established, and defendants did not dispute, that the ramps in the detention areas of the six courthouses were not compliant with the ADA's current slope requirements. As such, the parties agreed that a reasonable accommodation to overcome the ramps' steep slopes was for court and Sheriff's personnel to provide assistance to wheelchair-using detainees when maneuvering the ramps. The evidence, however, established that wheelchair-using detainees were not consistently assisted up and down courthouse ramps.

Similarly, the parties agreed that the bathroom facilities in the courthouse holding cells were not compliant with current ADA accessibility standards. Although defendants argued that providing portable commode chairs was a reasonable accommodation to overcome structural barriers, the court concluded that the commode chairs did not provide wheelchair-using detainees access on the same basis as non-disabled detainees to bathroom facilities at the six courthouses. Moreover, the record evidenced that wheelchair-using detainees were even without

this accommodation until early 2014. The court did not find that the evidentiary record supported a finding that plaintiffs' rights had been violated with respect to the Sheriff's transportation vehicles.

## DISCUSSION

**I.     Motion to Strike**

Defendants' motion to strike is denied. While plaintiffs' L.R. 56.1 statement suffers from numerous defects, as discussed above the court has already made factual findings with respect to many of the statements of fact defendants seek to strike. As a result of the findings made in the October 8 Order, many of the parties' statements of fact are now moot. To the extent that any of plaintiffs' still relevant statements of fact offend this court's local rules, the court will not consider them. See Gittings v. Tredegar Corp., 2010 WL 4930998, at *1 n.4 (N.D. Ill. Nov. 29, 2010).

**II.    Motions for Summary Judgment**

    **A.     Legal Standard**

A movant is entitled to summary judgment pursuant to Fed. R. Civ. P. 56 when the moving papers and affidavits show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(c); Becker v. Tenenbaum–Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light

4

most favorable to the party opposing the motion. See Green v. Carlson, 826 F.2d 647, 650 (7th Cir. 1987).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmoving party must, however, "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.[4]

**B.     Analysis**

To succeed on a Title II claim under the ADA,[5] a plaintiff must establish: (1) that he is a "qualified individual with a disability"; (2) who "was denied the benefits of the services, programs, or activities of a public entity" or otherwise was discriminated against by the public entity; and (3) that such "denial or discrimination was by reason of his disability." Love v. Westville Corr. Ctr., 103 F.3d 558, 560 (7th Cir. 1996) (internal quotations omitted); 42 U.S.C. § 12132. Title II's implementing regulations provide that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are

---

[4] The court acknowledges, as it did in its earlier order, that the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626(a), is applicable to this litigation.

[5] As the court held in the October 8 Order, plaintiffs' Rehab Act claims as applied to the original construction of the courthouses fail because the County, which was responsible for construction of the courthouses, does not fit the definition of "program or activity" under the statute. Lacy, 2015 WL 5921810 at *3. However, this holding has little impact of the instant motions because the analysis under each statute is essentially identical, and plaintiffs can recover under only one statute.

necessary to avoid discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(7). Thus, discrimination can be established by evidence that the defendant refused to provide a reasonable accommodation. Washington v. Indiana High Sch. Athletic Ass'n, Inc., 181 F.3d 840, 847 (7th Cir. 1999).

As discussed above, plaintiffs have already established that they were discriminated against in violation of the ADA.[6] However, to recover damages under the ADA, as plaintiffs now seek to do, they must prove that defendants intentionally discriminated. CTL ex rel. Trebatoski v. Ashland Sch. Dist., 743 F.3d 524, 528 n.4 (7th Cir. 2014). Although not settled by the Seventh Circuit, see Strominger v. Brock, 592 Fed. Appx. 508, 511 (7th Cir. 2014), the majority of circuits that have addressed this issue, as well as courts in this district, have adopted a deliberate indifference standard for establishing intentional discrimination. See Reed v. Illinois, No. 14-C-2247, 2015 WL 4727754, *4-5 (N.D. Ill. Aug. 10, 2015) (holding that allegations of deliberate indifference satisfy the intentional discrimination requirement for ADA and Rehab Act claims). Deliberate indifference under the ADA "requires both '(1) knowledge that a harm to a federally protected right is substantially likely,' and (2) 'a failure to act upon that likelihood.'" Id. (quoting S.H. ex rel. Durrell v. Lower Merion Sch. Dist., 729 F.3d 248, 262-63 (3d Cir. 2013)). Under this standard, negligence or bureaucratic inaction is not sufficient to establish liability under the ADA. Durrell, 729 F.3d at 263. Given the apparent consensus that deliberate indifference is an appropriate standard for establishing intentional discrimination

---

[6] The court is aware of defendants' argument the certain plaintiffs do not qualify as "qualified individuals with a disability." However, as the court has previously held, plaintiffs are regarded as having a disability or at least have a record of impairment, 42 U.S.C. § 12102(1), and therefore qualify for protection under the ADA. Lacy, 2015 WL 1995576 at *2. Arguments concerning certain plaintiffs allegedly malingering will go to the issue of damages.

under the ADA and the parties' acceptance of such, the court will analyze plaintiffs' claims under this standard. Defendants argue that the evidence establishes that they did not have notice of the accessibility issues faced by plaintiffs until July 2014 when Lacy filed a grievance related to the holding cell bathroom facilities at Leighton. In addition, defendants argue that they did not fail to act to address potential ADA violations, because upon receiving notice they immediately took steps to accommodate plaintiffs. The court disagrees. The record establishes that there is no genuine issue of material fact as to defendants' knowledge of likely ADA violations and their failure to act in light of that knowledge.

Because defendants provided plaintiffs with wheelchairs, defendants knew that plaintiffs had certain disabilities that resulted in mobility issues. Defendants also knew that wheelchair-using detainees, like all detainees, must traverse courthouse ramps and wait in holding cells prior to court. Defendants knew that while waiting for their cases to be called, detainees, including plaintiffs and other wheelchair-using detainees, may need to use the restroom (hence providing bathroom facilities in the holding cells).

Defendants also knew that the ramps and bathroom facilities in the detention areas of the courthouses were not compliant with current ADA architectural standards. Defendants' knowledge is evidenced by the extensive, county-wide project begun in 1998 to bring "publicly accessed areas" of County owned facilities into compliance with then-current ADA structural requirements. The County determined, through the help of a consultant, that the public areas of the County courthouses were not in compliance with ADA architectural standards and should be reconstructed to conform to the 1991 statutory standards. On August 6, 2004, the Project Director of the Cook County Office of Capital Planning announced that once the renovations

were complete, the County would be "the first government to have tackled the ADA issue and won." Construction in the county courthouses was completed in September 2004, including bringing ramps and bathroom facilities in the public areas of the courthouses into compliance. Because the County knew that the public areas of the courthouses were non-compliant with ADA structural requirements, it also knew that the detention areas, constructed at the same time as the public areas, were also out of compliance, therefore requiring defendants to provide accommodations to wheelchair-using detainees.

Defendants were also put on notice concerning accessibility issues by other litigation[7] that alerted them to the fact that accommodations to overcome structural barriers may be necessary for wheelchair-using detainees. For example, in 2007, several wheelchair-using detainees held at Cook County Jail filed a lawsuit seeking damages for alleged discrimination on the basis of their disabilities at the jail. Phipps v. Sheriff of Cook County, 249 F.R.D. 298 (N.D. Ill. 2008). Phipps involved the same class of individuals and at least one of the same accessibility issues – toileting– as the instant case, putting the Sheriff on notice that wheelchair-using detainees may require accommodations. Although Phipps involved accessibility at the jail and not the courthouses, the Sheriff's duties to this class of individuals is not limited to their housing at the jail, but also to their custody and care while attending court proceedings.

Similarly, in February 2014, a wheelchair-using detainee filed a federal lawsuit complaining about, among other things, his inability to use the restroom in holding cells outside

---

[7] To the extent that defendants argue that outside litigation constitutes inadmissible hearsay, the court notes that it is not relying on the evidence for the truth of the matter asserted, but for defendants' state of mind with respect to the condition of the courthouses. See Fed. R. Evid. 803(3).

8

of the Leighton courthouse courtrooms. Givens v. Dart, case no. 14-C-1269. Shortly thereafter, in April 2014, Assistant Chief of Sheriff's Court Services, James Bank, issued a memorandum discussing the fact that there are no handicap accessible toilet facilities in the holding cells behind the courtrooms at the Leighton courthouse. From these undisputed facts, it is evident that defendants had knowledge of the substantial likelihood that plaintiffs' federally protected rights against discrimination on the basis of their disability were being violated.

Armed with this knowledge, the record establishes that defendants deliberately failed to act to protect plaintiffs' rights until 2014. With respect to the courthouse ramps, the Lieutenant of Transportation for the Sheriff, Grant Martin, testified on January 22, 2015, that he had been instructing Sheriff's employees to push wheelchair-using detainees up and down courthouse ramps only for the past year. Similarly, while the Sheriff's ADA coordinator conducted training on the Sheriff's policy of assisting wheelchair-using detainees to maneuver the ramps, such training began only in March 2014. In addition, the Sheriff's policy concerning wheelchair-using detainees receiving ramp assistance was not put into writing until March 13, 2015, and as the court found, was not consistently followed. Lacy, 2015 WL 5921810 at *6.

Defendants did not begin providing any accommodations to wheelchair-using detainees with respect to the bathroom facilities until the Spring of 2014 when ADA Coordinator Fuentes began placing commode chairs in the courthouses' lower-level holding cells. However, as discussed at length in the court's October 8 Order, the commode chairs were not considered ADA-compliant and specifically required that they be used only with assistance, but no such assistance was provided. Nor is there any evidence that defendants followed up to determine whether the chairs actually assisted wheelchair-using detainees to use the holding cell bathroom

facilities. Based on consistent and credible testimony from plaintiffs' witnesses, supported by video evidence, the court held that the commode chairs were not a reasonable accommodation under the ADA. Likewise, defendants' policy and practice of bringing wheelchair-using detainees to a public accessible restroom was not implemented (if at all) until April of 2014.

Because defendants were on notice of the need to provide accommodations for wheelchair-using detainees attending court at the six courthouses as early as 1999, their deliberate decision not to provide such assistance prior to 2014 establishes intentional discrimination.[8]

## **CONCLUSION**

For the foregoing reasons, the court grants plaintiffs' motion for partial summary judgment, denies defendants' motion for summary judgment, and enters a judgment of liability in favor of plaintiffs, and against defendants with respect to plaintiffs' individual damages claims. At the December 2, 2015, hearing previously set, the court will set a schedule for determining damages.

**ENTER:** November 19, 2015

_____
**Robert W. Gettleman**
**United States District Judge**

---

[8] The court, however, acknowledges and commends defendants on the extensive ADA-related improvements it has made to the detention areas at the six county courthouses since mid-2014. Although not legally obligated to do so under the ADA, defendants have undertaken construction at each of the courthouses to bring the lower-level detention areas into compliance with the ADA's 2010 accessibility standards. While not all of the scheduled construction has been completed, the court and the parties anticipate addressing the remaining work at future proceedings.