1                  UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
2                      EASTERN DIVISION

3   JOHNATHAN LACY, et al.,       )
                          )
4           Plaintiffs,     )
                          )
5          vs.           ) No. 14 C 6259
                          )
6   THOMAS DART, et al.,        ) Chicago, Illinois
                          ) November 7, 2019
7          Defendants.     ) 9:33 a.m.

8                 TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE ROBERT W. GETTLEMAN
9
   APPEARANCES:
10
   For the Plaintiffs:     THOMAS G. MORRISSEY, LTD.
11                        BY:  MR. THOMAS G. MORRISSEY
                             MR. PATRICK W. MORRISSEY
12                        10150 South Western Avenue, Suite Rear
                        Chicago, Illinois  60643
13                        (773) 233-7900

14
   For Cook County:        COOK COUNTY STATE'S ATTORNEY'S OFFICE
15                        BY:  MR. LYLE K. HENRETTY
                        Assistant State's Attorney
16                        50 West Washington Street, Suite 500
                        Chicago, Illinois  60602
17
18   For Thomas Dart:        COOK COUNTY STATE'S ATTORNEY'S OFFICE
                        BY:  MS. RAANA V. HAIDARI
19                        Assistant State's Attorney
                        50 West Washington Street, Suite 500
20                        Chicago, Illinois  60602

21
   Also Present:           MS. MAUREEN REAGAN
22
23   Official Court Reporter:  NANCY L. BISTANY, CSR, RPR, FCRR
                        219 South Dearborn Street, Room 1706
24                        Chicago, Illinois 60604
                        (312) 435-7626
25                        *nancy_bistany@ilnd.uscourts.gov*

1          (Proceedings heard in open court:)

2          THE CLERK:  14 CV 6259, Johnathan Lacy versus Thomas

3     Dart.

4          MR. THOMAS MORRISSEY:  Good morning, Your Honor.

5          Thomas Morrissey and Patrick Morrissey on behalf of

6     the class.

7          MR. HENRETTY:  Good morning, Your Honor.

8          Lyle Henretty on behalf of the county.

9          MS. HAIDARI:  Good morning, Your Honor.

10         Raana Haidari on behalf of the sheriff.

11         MS. REAGAN:  Good morning, Your Honor.

12         I'm Maureen Reagan.  I was told to come here by

13    Mr. Patrick Lacy to talk about my unpaid bill for expert

14    services this morning.

15         THE COURT:  Well, that's a different issue.  Let's

16    talk about the case.  Judge Weisman has informed me that you

17    guys have finally reached a settlement?

18         MR. THOMAS MORRISSEY:  We have, Your Honor.

19         THE COURT:  Is it a consent decree of some sort or a

20    settlement agreement, or is it just a dismissal?  I didn't know

21    the details.

22         MR. THOMAS MORRISSEY:  We worked extremely hard for

23    many hours, and unfortunately, they weren't willing to enter

24    into a consent decree --

25         THE COURT:  So --

1           MR. THOMAS MORRISSEY:  -- or any type of agreement

2  that would fulfill our request and our complaint.

3           However, they did agree to comply with the Court's

4  existing order in regards to the Maywood court building.  They

5  wouldn't provide --

6           MR. HENRETTY:  Judge, are we putting -- are we

7  putting this on the record?  This was the settlement agreement.

8           THE COURT:  Well, if it's a settlement agreement

9  that's going to resolve the case, I think we should put it

10  on the record --

11           MR. HENRETTY:  And I think that they think that

12  they --

13           THE COURT:  I'm not getting into your settlement

14  discussions and --

15           MR. HENRETTY:  Right.  I just think that ultimately

16  they're going to have to file a motion for approval anyway.  So

17  I -- if we want to take the time now, we can.  But it seems

18  like they're going to have to file something anyway and let the

19  class know what's going on.

20           I'm happy to talk about it now, though.

21           THE COURT:  I would just like to know --

22           MR. HENRETTY:  Sure.

23           THE COURT:  -- what your settlement is.

24           MR. THOMAS MORRISSEY:  It's a B2 class, too, Your

25  Honor.  It's injunctive only.  The individual plaintiffs are

1    going to receive compensation.  That's one -- one objective.

2              The Maywood court building, the privacy screens are

3    going to be moved at some point.  We've gotten some assurances

4    that they've --

5              THE COURT:  Well, that part of the injunction was

6    upheld.

7              MR. THOMAS MORRISSEY:  Right, right.

8              THE COURT:  So I would hope that it would have been

9    done already.

10             MR. THOMAS MORRISSEY:  Well, we don't -- I just want

11   to note for the record, we don't have a specific time period

12   for that, but they've committed themselves and will commit to

13   doing that in the agreement.

14             THE COURT:  Okay.

15             MR. THOMAS MORRISSEY:  We don't have anything

16   formalized in the agreement in regards to the Leighton ramps.

17   However, Judge Weisman conveyed to us that they've gone and

18   sought permits from the City of Chicago to do that.

19             So I think they're hopefully, hopefully going to do

20   the ramp in the foreseeable future.  I can't promise, but I

21   hope.

22             THE COURT:  That's sort of outside the four corners

23   of what we were talking about.  We had always assumed that that

24   wasn't going to happen.  If it does happen, that would solve a

25   lot of problems, obviously.

1  MR. THOMAS MORRISSEY:  Right.  As far as the four

2  corners of what the Seventh Circuit ruled on, they're committed

3  to doing that.

4  THE COURT:  We're really only talking about the jury

5  trials for these three plaintiffs.  So if we get that out of

6  the way, in a sense, the case is where it is.  There's an

7  injunction in place.  It's been affirmed, and that's as far as

8  we went with the case.

9  MR. THOMAS MORRISSEY:  That's correct.  And I'd like

10  to think, Your Honor, that due to our efforts that we

11  accomplished some matters at the suburban courtrooms.  We got

12  ramps at the suburban courtrooms.  We got holding cells that

13  are accessible in the suburban.

14  Whether it was due to -- formally due to this

15  litigation or it was just the fact that the litigation was in

16  process, it was done.

17  THE COURT:  Well, now we have the issue -- well, do

18  we really need a motion to approve a settlement if you're --

19  basically the only thing left for me after the Seventh Circuit

20  ruled was to conduct jury trials for these three guys.

21  If you settle with them and they give you releases,

22  that's the end of this case on the merits.  And then we're

23  going to have a fee petition.

24  MR. THOMAS MORRISSEY:  Well, we resolved the fee

25  matter --

1          THE COURT:  You did?  Okay.

2          MR. THOMAS MORRISSEY:  -- part of that.  However,

3    what's unresolved is the matter of the expert's cost, her fees.

4          THE COURT:  Well, you should file a bill of costs.

5          MR. THOMAS MORRISSEY:  Well --

6          MS. HAIDARI:  Your Honor, to be clear, for the

7    record, our agreement to settle the fees was all inclusive.  So

8    our agreement for the monetary amount that we're giving

9    plaintiffs' counsel is including any fees.

10          So any fee petition that there is, that is to come

11   out of the money that we're already paying them.  We are not --

12   that settlement was under the condition that we're not going to

13   also pay expert fees.

14          MR. HENRETTY:  That's correct, Your Honor.

15          MR. THOMAS MORRISSEY:  And I'll agree that that is

16   true, but the matter of the reasonableness of the expert's

17   fees, we agreed that we would leave it to this Court's

18   decision.

19          THE COURT:  Well, I'm hearing two different things.

20   They're saying --

21          MR. HENRETTY:  A slightly --

22          THE COURT:  They're saying they agreed on X

23   dollars --

24          MR. HENRETTY:  Right.

25          THE COURT:  -- for fees and costs.

1          Is that right?

2          MR. HENRETTY:  Ms. --

3          THE COURT:  Is that what you're saying?

4          MR. HENRETTY:  Correct.  Counsel asked --

5          THE COURT:  And that would include expert fees?

6          MR. HENRETTY:  Correct.  We're not -- we had agreed

7  our amount was complete that day.  That was one number.  That's

8  what we were paying.

9          There was some negotiation regarding whether or not

10  we would agree to let Your Honor decide if we would be paying

11  expert fees.  We said no, that one amount set that day, and

12  anything beyond that would be between counsel and his experts.

13          MR. THOMAS MORRISSEY:  Your Honor, part of the

14  settlement -- and the settlement hasn't been formalized nor

15  approved by the county board yet.  But part and parcel of the

16  settlement was not only that there would be a lump sum payment

17  to class counsel and -- but that whatever fees would come out

18  of that for an expert would be decided by the Court.

19          And previously the Court has indicated a willingness

20  to entertain that issue.

21          THE COURT:  Well, I would entertain it if it was part

22  of your deal.  They're saying it's not part of your deal.

23          MS. HAIDARI:  Your Honor, we --

24          THE COURT:  And maybe you should go back to Judge

25  Weisman and have him -- since he's been the one in the weeds

1    here with this settlement, maybe you've got to go back to him

2    and see whether you've got a deal.

3         MR. HENRETTY:  From a practical standpoint, my

4    understanding was Mr. Morrissey didn't want to pay the full

5    amount for his -- for the experts.

6         We said we won't take any --

7         THE COURT:  Well, I think I've already opined -- with

8    all due respect to the expert, I've already opined that I

9    thought those -- that bill was far too high.

10        MR. HENRETTY:  Right.  Yeah, and I think that would

11   be between Mr. Morrissey and the Court.  We wouldn't take a

12   position.

13        THE COURT:  Well, but right now I don't have to take

14   a position; you don't have to take a position.

15        If the deal is you gave them a lump sum for fees and

16   costs, then it's up to -- then it's between Mr. Morrissey and

17   his expert as to how much she would accept.  And if she has a

18   problem with that, then she should go -- you know, then she has

19   to resolve that with Mr. Morrissey in some other forum, not

20   this forum.  That's a matter of contract between the two of

21   them.

22        MR. THOMAS MORRISSEY:  I believe, at least what was

23   communicated to me by Judge Weisman, that he would -- we would

24   request this Court to review the fees and give an opinion on

25   the reasonableness.

1          To go back one step --

2          THE COURT:  But what you're asking me to do --

3          MR. THOMAS MORRISSEY:  I understand.

4          THE COURT:  -- from what I've heard, is to insinuate

5    or -- not insinuate, but to sort of get involved with your

6    dispute with your own expert, which is not part of this case if

7    you've settled already on a lump sum.  That's a matter of

8    contract between you and your expert.

9          And, you know, you're really good at settling these

10   things, Mr. Morrissey.  I would hope that you would be able to

11   settle with this young lady who helped you out here.  I'm not

12   saying she's not entitled to anything.  I just thought that the

13   fees that were -- that I saw many years ago now seemed to be

14   awfully high because, as I recall it, it was more of a matter

15   of measurement.  And I remember the testimony and everything

16   else.  I just thought it looked very high to me.

17         If I had -- if I had to, on a bill of costs or some

18   other matter, if it wasn't settled and you came in on a fee

19   petition, then I would be -- then I would have to deal with it.

20   But if there's a settlement on a lump sum basis, I'm not going

21   to get involved.

22         MR. THOMAS MORRISSEY:  I believe --

23         MS. REAGAN:  May I say something, Your Honor?

24         THE COURT:  You can, but hold on one second.

25         MR. THOMAS MORRISSEY:  What I suggest is that,

1  perhaps, if we went back to Judge Weisman and see whether it

2  was his understanding that allowing this Court to have

3  jurisdiction over the fee matter --

4          THE COURT:  Well, he can't give me jurisdiction.

5          MR. THOMAS MORRISSEY:  I understand.  I understand

6  that.  But as part of --

7          THE COURT:  You can't give me, and I can't give me.

8          MR. THOMAS MORRISSEY:  I understand that.  I

9  understand that.

10          But to go back one step, Ms. Reagan and my office are

11  adverse in regards to these fees.  She retained an attorney

12  several years ago to prosecute her claim against us for the

13  fees.  And now that attorney, Mr. Stein, was advised of the

14  hearing today and said he's not representing Ms. Reagan.

15          So if it's the Court's decision that Ms. Reagan ought

16  to proceed before a different forum, it's probably okay with us

17  but --

18          THE COURT:  It doesn't sound to me like there's

19  federal jurisdiction over it.

20          Okay.  Ms. Reagan, you've been wanting to say

21  something.

22          MS. REAGAN:  This came out -- was a surprise to me,

23  this total thing.  I haven't talked to that other attorney in

24  two years, my former attorney.  He didn't resign.  I said let's

25  just not go any further.  It was becoming very difficult.

1    So I've never talked to the Morrisseys about some

2    sort of settlement if they thought the fees were high.  I'm

3    reasonable.  I'd just like to have it over with.

4    THE COURT:  I'm sure you would.  I would like you to

5    have it over with as well.

6    What I suggest is this.  If you've made your deal as

7    far as this case goes, we should terminate this case and be

8    done with it.  The injunction is in place.

9    If there's any problem with complying -- I mean, you

10    know, those screens should have been moved by now.  But if

11    there's -- you know, if there's a dispute about that, fine.

12    The ramp was not part of the case -- I mean, the ramp

13    was part of the case, but I didn't -- I didn't order the ramp

14    to be fixed.  I think it's a great idea to fix that ramp.  If

15    you do that -- you know, there's a lot of things that need to

16    be done there.

17    And as I said before, I think the sheriff and the

18    county have gone to reasonable lengths in many respects to try

19    to fix these things.

20    You settled with the individual plaintiffs.  That's

21    it.  That's it.

22    MR. HENRETTY:  That's fine.

23    THE COURT:  That's the end of it.

24    And then, Ms. Reagan, what I would do is talk to the

25    Morrisseys about your fees.  How I feel about them really isn't

1  relevant.  It's how you feel about them and how they feel about

2  them at this point, because they retained you.

3         And if you can't resolve it, maybe you could

4  arbitrate it or something like that, do it without a lot of

5  pain and suffering, and flip a coin or, you know, do something

6  to get this over with.

7         I agree with Ms. Reagan.  This should have been --

8  this should be done.

9         MR. THOMAS MORRISSEY:  What I want to ask, since

10  there is apparently a -- you know, we communicated through

11  Judge Weisman during the settlement proceeding, and we thought

12  the deal included the Court ruling on the fee petition.

13         And I would ask for the chance to put this matter

14  over to see whether or not that's part of the deal or not.  And

15  it's really a material term to the settlement because --

16         THE COURT:  Well, maybe it is, and maybe it isn't.  I

17  think maybe you should have a conversation with Ms. Reagan and

18  see if it's worth holding up the settlement for this matter

19  that's totally collateral to the merits of the case.

20         MS. HAIDARI:  Your Honor, I think there is some

21  confusion on Mr. Morrissey's part.

22         The deal was that we would pay them X dollars for

23  their attorneys' fees.  This was -- this X dollars is all

24  inclusive of all of their costs, all of their fees, including

25  their expert.

1      We said we would not object and we had no stand -- we
2   had no opinion on whether they came in front of you to collect
3   their expert fees.

4      If you are saying you can't do that, we still have no
5   opinion on that.

6      THE COURT:  But it would still come out of that
7   money.

8      MS. HAIDARI:  Right.  We're saying that we're paying
9   them X amount.  Whatever it is should come out of that.  We
10  don't think we need to go back in front of Judge Weisman.
11  We've made our deal.  It's coming out of that money.

12      Now, what that amount is is between the Court,
13  Mr. Morrissey, and Ms. Reagan or the Morrisseys and Ms. Reagan.
14  We as the county and the sheriff feel that our part is
15  complete.  We've done -- we've come to an agreement.

16      THE COURT:  I understand what you're saying, but
17  here's the problem.

18      If there were not a settlement here, if you just
19  agreed to a partial settlement, let's say, and the fee issue
20  was still open, they would have filed a fee petition and a bill
21  of costs.  But what you're saying is your settlement, in a
22  sense, went --

23      MR. HENRETTY:  Without --

24      THE COURT:  -- made that moot.

25      MR. HENRETTY:  Without getting into the details of

1    the discussion, this was raised.  And we absolutely --

2              THE COURT:  You took no position, basically?

3              MR. HENRETTY:  We -- well, that ultimately, yes.

4    There were several attempts before that to get us to agree to

5    something related to the contractual relationship when we would

6    not.  And this was discussed --

7              THE COURT:  But right now the deal you made says you

8    gave X dollars -- I keep saying the same thing -- to counsel,

9    and that included fees and costs.

10             MR. HENRETTY:  Correct.

11             MS. HAIDARI:  Your Honor --

12             MR. THOMAS MORRISSEY:  Well, Judge --

13             THE COURT:  So the deal you made precludes a bill of

14   costs, precludes a fee petition, and all the rest of it.

15             MR. HENRETTY:  Correct.

16             THE COURT:  I'm done.

17             MR. THOMAS MORRISSEY:  No.  But, Judge, I don't think

18   that was the -- there is a confusion.  It hasn't been

19   memorialized in --

20             THE COURT:  How much are we talking about here?

21             MR. HENRETTY:  A lot.

22             MS. REAGAN:  Well --

23             THE COURT:  I mean, I don't remember your bill,

24   Ms. Reagan.

25             MR. HENRETTY:  I apologize.  I thought you meant the

1   whole amount.

2           MS. REAGAN: Where are we? They were lumped together

3   with the Clemons case, too.

4           So total -- those both cases, it was something around

5   90,000. He had already paid 35,000 on some of Clemons, some of

6   this.

7           So we're somewhere near 75,000. Well, okay. 111,000

8   minus 35 is 76,000. That's where we stand. But we've never

9   talked about making some sort of compromise on that.

10           MR. THOMAS MORRISSEY: Well --

11           MS. REAGAN: I haven't been able to get to that

12   point.

13           MR. THOMAS MORRISSEY: Well, Judge, we had a trial in

14   front of Judge Tharp in the Clemons case. We litigated the

15   attorneys' fees and costs, and we ended up into an agreement.

16   And the agreement was for her fees, 13,000. We asked for

17   21,000, and the judge said -- and we have a transcript -- that

18   8,000 was -- 21,000 was too much. 13,000 was adequate

19   compensation.

20           Ms. Reagan has been paid $38,000; 25,000 in Lacy.

21           And as far as what transpired as far as the

22   agreement, the agreement with Judge Weisman, because there was

23   such a disputed amount between Ms. Reagan and my firm, that

24   we -- it's our understanding of the deal was that the Court

25   would review and give an opinion on the reasonableness of the

1  remaining amount of her fee request.

2  THE COURT:  But that would be coming out of your --

3  MR. THOMAS MORRISSEY:  Yes.

4  THE COURT:  -- out of the money they gave you?

5  MR. THOMAS MORRISSEY:  Right.

6  THE COURT:  How do I have jurisdiction over that?

7  MR. THOMAS MORRISSEY:  Well, it's --

8  THE COURT:  I mean, we've been talking about the

9  Seventh Circuit.  We shouldn't be getting into enforcing

10  settlement agreements that are basically state law contracts.

11  So I really don't -- I mean, if you wanted me to

12  volunteer to do it or Judge Weisman to volunteer to do it, I

13  mean, I would be probably in a better position because I tried

14  the cases and everything else.

15  MR. THOMAS MORRISSEY:  I think we would -- at least

16  we would submit to your providing an opinion on it.  And,

17  again, we don't represent Ms. Reagan at all on this matter.

18  THE COURT:  No, I understand.  You're adversaries, in

19  a sense.

20  MR. THOMAS MORRISSEY:  Right.  And we would agree to

21  follow whatever the Court recommends.

22  THE COURT:  Basically voluntarily -- it's a

23  voluntary -- I'm acting as some sort of mediator or arbitrator

24  here, right?

25  MR. THOMAS MORRISSEY:  Right.

1          THE COURT:  Regardless of the jurisdictional issue?

2          MR. THOMAS MORRISSEY:  Right.

3          THE COURT:  It's sort of outside the jurisdiction.

4   In the meantime, we could resolve this case, but you want to

5   keep it open until that happens?

6          MR. THOMAS MORRISSEY:  Correct.

7          THE COURT:  So how would you propose we do that?

8          MS. REAGAN:  Could I say something?

9          THE COURT:  Sure.

10         MS. REAGAN:  I don't know the correct protocol, but

11  could we just do it now?  I mean, suggest -- we're off 3,000 on

12  how much he paid --

13         THE COURT:  All right.  Let's go off the record for a

14  second, because I think we are talking about a settlement at

15  this point.  All right?

16         MS. REAGAN:  Pardon me?

17         THE COURT:  We're going to go off the record --

18         MS. REAGAN:  Okay.

19         THE COURT:  -- because I think we're talking about

20  trying to settle the case.  All right?  Is that agreeable?

21         MR. THOMAS MORRISSEY:  That's fine, Your Honor.

22  That's fine.

23         THE COURT:  Okay.

24         MR. HENRETTY:  That's fine with us, Your Honor.  I

25  just --

1          THE COURT:  You're --

2          MR. HENRETTY:  I'm concerned about getting involved

3     with their contractual dispute.  That's something I --

4          THE COURT:  No, I agree with you.  I understand your

5     position.  I think you can even have a seat.

6          MR. HENRETTY:  Thank you.

7        (Discussion off the record.)

8          THE COURT:  We had a settlement discussion off the

9     record between Ms. Reagan and counsel for -- class counsel.

10         And Ms. Reagan has agreed to accept an additional

11    $20,000 for the fees -- for fees that cover her expert

12    testimony and work for the plaintiff class.

13         MR. THOMAS MORRISSEY:  And --

14         THE COURT:  And Mr. Morrissey has agreed to pay her

15    that.  Is that correct?

16         MR. THOMAS MORRISSEY:  That's correct.  When the --

17         THE COURT:  Is that correct, Ms. Reagan?

18         MS. REAGAN:  Yes.

19         THE COURT:  Okay.

20         MR. THOMAS MORRISSEY:  And that's when the settlement

21    funds come from Cook County.

22         THE COURT:  Well, he's going to pay you out of the

23    money he gets --

24         MS. REAGAN:  Okay.

25         THE COURT:  -- from Cook County.

1    MS. REAGAN:  And when does that come?  Do we know?

2    THE COURT:  It has to go before the county board,

3    right?

4    MR. THOMAS MORRISSEY:  Judge, he has another court

5    hearing.

6    THE COURT:  Go ahead.  Your dad can handle this.

7    (Mr. Patrick Morrissey left the courtroom.)

8    MS. REAGAN:  I missed that.

9    THE COURT:  In other words, the settlement has to go

10   before the county board for approval, generally when the

11   State's Attorney recommends something like this, particularly

12   in a case of this nature, after having gone through all of that

13   with Judge Weisman.  I don't even know the number, but it will

14   be a public record.  And it will be approved by the county

15   board hopefully when?

16   MR. HENRETTY:  It's going to go before the litigation

17   subcommittee in December, and that would mean, assuming that

18   goes well, January before the county board.

19   And this won't affect that timetable, Your Honor.

20   THE COURT:  No, this -- this keeps that timetable.

21   MR. HENRETTY:  No, I just mean my next question won't

22   affect that time table, because we're putting it through

23   regardless of this.

24   But I do have some concerns, because I think the

25   class is still alive.  So as far as giving notice to the class

1  of the settlements, I think the rule might say that we have to

2  do that.  And I'll defer, obviously, to Your Honor on that

3  but --

4          MR. THOMAS MORRISSEY:  It's not --

5          THE COURT:  I don't think so, because the only thing

6  actually pending before me is these individual cases that the

7  Court of Appeals held were entitled -- that the county was

8  entitled to a jury --

9          MR. HENRETTY:  Well, that --

10         THE COURT:  -- for those.

11         The rest of it is an injunction that was entered.  It

12  was a B2 class, so it was entered on behalf of the class.

13         And I don't think you need notice, because the class

14  is not getting any benefit.  There needs to be no approval

15  because it was an injunctive relief except for the individual

16  plaintiffs.

17         MR. HENRETTY:  The Maywood class -- or the Maywood

18  injunction was, but then the other injunctions the Seventh

19  Circuit overturned.  So that's why -- my concern is those other

20  injunctions.

21         THE COURT:  But we're leaving it at it is.

22         MR. THOMAS MORRISSEY:  Right, unfortunately.

23         THE COURT:  Yeah.  I mean, in other words, there's

24  nothing for a class -- for members of the class to approve or

25  disapprove.  So I think we're safe on that.

1            MR. HENRETTY:  All right.

2            THE COURT:  And you could put that in your report to

3  your --

4            MR. HENRETTY:  That's fine.

5            THE COURT:  -- people and if there's a problem -- so

6  I'm going to have to -- when is the county board meeting in

7  January?

8            MR. HENRETTY:  I think it's mid-January.  I would

9  expect a check by the end of January, although let me -- that's

10  a good question.  Let me check.

11      (Brief pause.)

12            MR. HENRETTY:  Sorry.  I don't have the actual sheets

13  yet for next year, so I'm looking it up online to make sure I

14  have it.

15            I'm sorry.  I'm not sure the new schedule is out yet,

16  but it's usually mid-month.

17            THE COURT:  I'm just going to put in my notes

18  mid-January.  My last day here will be the 27th.

19            So why don't you -- I'll just continue this for final

20  status January 27, 9:00.

21            MR. THOMAS MORRISSEY:  Okay.

22            MR. HENRETTY:  Thank you, Your Honor.

23            MS. REAGAN:  When was that?

24            THE COURT:  You don't have to be here.

25            MS. REAGAN:  Oh.

1      THE COURT:  You've made your deal, you know, and
2  Mr. Morrissey will be good for it.

3      So I'll see somebody back here at 9:00 and hopefully
4  dismiss the case --

5      MR. HENRETTY:  Thank you.

6      THE COURT:  -- dismiss the individual claims.

7      MR. THOMAS MORRISSEY:  Right.  Yeah.  I just want to
8  thank the Court for your time over the last five years with the
9  case, Your Honor.  I think it moved the ball forward in some
10  respects.  I'm not entirely happy with it, but it did move the
11  ball forward.

12      THE COURT:  You're welcome.

13      MR. THOMAS MORRISSEY:  All right.

14      MR. HENRETTY:  Thank you.

15      MS. HAIDARI:  Thank you.

16      MS. REAGAN:  What was the date in January?

17      THE COURT:  January 27th, but you don't have to be
18  here.

19      MS. REAGAN:  Right.  Okay.

20      THE COURT:  As soon as they get their check, they're
21  going to pay you the money that we just agreed to.

22      MS. REAGAN:  Thank you.

23      THE COURT:  All right.  Thank you.

24      (Proceedings concluded.)

25

```
 1                    C E R T I F I C A T E

 2

 3

 4              I, Nancy L. Bistany, certify that the foregoing is a

 5    complete, true, and accurate transcript from the record of

 6    proceedings on November 7, 2019, before the HON. ROBERT W.

 7    GETTLEMAN in the above-entitled matter.

 8

 9

10    /s/ Nancy L. Bistany, CSR, RPR, FCRR          December 8, 2019

11       Official Court Reporter                    Date
         United States District Court
12       Northern District of Illinois
         Eastern Division
13

14

15

16

17

18

19

20

21

22

23

24

25
```